**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SAMUEL CABASSA,**
                              **Plaintiff,**

       **-against-**                                 **9:06-CV-852**
                                                          **(JMH)**

**JOSEPH SMITH, et al.,,**

                              **Defendants.**
_____

**DECISION and ORDER**

**HOOD, D. J., Sitting by Designation:**

    Plaintiff, Samuel Cabassa, is an inmate in the custody of the New York State Department of Correctional Services ("DOCS")[1]. In this 42 U.S.C. § 1983 action, Plaintiff seeks compensatory and punitive damages against Defendants, various DOCS doctors and administrators, in both their individual and official capacities. Plaintiff's Complaint alleges violations of the Eighth Amendment, Title II of the American With Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq*, and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794 (collectively the "Acts"). The matter is before the Court on Defendants' second motion for

---

[1] Plaintiff is currently serving a sentence of 30 years to Life imprisonment for Attempted Murder in the First Degree, Criminal Use of a Firearm in the First Degree, Attempted Assault in the Second Degree, and Criminal Possession of a Weapon in the Second Degree.

summary judgment[2] (Dkt. No. 59) to which Plaintiff has responded. (Dkt. No. 60).

## Statement of Facts

The following facts are gleaned from Magistrate Judge Peebles' earlier Report and Recommendation:

> Plaintiff's claims in this action center upon defendants' diagnosis and treatment of five medical conditions identified in his complaint. A review of the record now before the court confirms that over time plaintiff voiced complaints about each of these conditions, and discloses various efforts by defendants and other health care providers, both within the DOCS and on the part of outside consultants, to address plaintiff's conditions. Plaintiff contends that between April of 2000 and April, 2006, he complained "on approximately thirty separate occasions" to defendants Dr. Forte and Dr. Genovese that he was experiencing severe pain in his left shoulder, but that despite his complaints no action was taken, aside from the scheduling of magnetic resonance imaging ("MRI") testing on one instance and some physical therapy. Complaint (Dkt. No. 1) ¶ 6(1). Plaintiff also alleges

---

[2] Defendants' First Motion for Summary Judgment ("First Motion") was the subject of a Report Recommendation issued by Magistrate Judge David E. Peebles on August 21, 2009 ("Report Rec."). [Dkt. No. 51]. In his Report Recommendation, Judge Peebles issued the following recommended findings: (1) Dismissal of plaintiff's Eighth Amendment deliberate indifference claims; (2) Dismissal of plaintiff's ADA and Rehabilitation Act claims as against all defendants in their individual capacities, and; (3) Leave for defendants to move for summary judgment to address the merits of plaintiff's remaining claims, *i.e.* ADA and Rehabilitation Act causes of action against defendants in their official capacities. Judge Peebles' Report Recommendation was accepted and adopted in all respects by U.S. District Judge David N. Hurd on September 29, 2009. [Dkt. No. 56]. The matter was thereafter referred back to Magistrate Judge Peebles for further proceedings. [Dkt. No. 57].

When the case was assigned to the undersigned,Magistrate Judge Peebles was relieved of all further responsibility for the case.

2

>  that between November, 2000, and March of 2004 his
> fourteen separate complaints of abdominal pain due to a
> hernia were similarly disregarded. Complaint (Dkt. No. 1)
> ¶ 6(2). He likewise maintains that between August of 2001
> and July, 2003, he suffered "serious degenerative
> arthritis" which was not properly medicated. Complaint
> (Dkt. No. 1) ¶ 6(3). The focus of plaintiff's complaints
> regarding Dr. Forte's treatment of his arthritis appears
> to be his alleged failure to provide plaintiff requested
> medication to relieve pain in his shoulders, hips, knees
> and lower back between August 24, 2001 and July 10, 2003.
> *Id.*
>
>  Plaintiff also complains of defendants' treatment of
> his right knee, asserting that between August 21, 2001 and
> April of 2003 he was denied an appointment with an
> outside specialist, and that as a result the diagnosis of
> his knee condition as a torn meniscus, partial ligament
> and horizontal cleavage tear, and corresponding
> arthroscopic surgery in January of 2006 to repair that
> damage, were delayed. Complaint (Dkt. No. 1) ¶ 6(4).
> Lastly, plaintiff, who is blind in his left eye, asserts
> that defendants failed to provide him with proper care
> and treatment for distorted vision in his right eye from
> March of 2003 until October of 2004, additionally
> alleging that he was denied the use of a contact lens for
> his right eye on two separate occasions. Complaint (Dkt.
> No. 1) ¶¶ 6(5)-6(7).

(Dkt. No. 51, 4-5)(footnote omitted).

## Summary Judgment Standard

Summary judgment may be granted when the moving party carries its burden of demonstrating the absence of a genuine issue of material fact. Fed. R. Civ. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir 1990). It is well-settled that "ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motions." *Id.* Where a moving party has met its burden, however, the nonmoving party must do more than "simply show that there is some

metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 585-89 (1986). Instead, the nonmoving party must demonstrate specific facts showing that there is a genuine issue for trial. *Id.*, *see also*, *Burt Rigid Box v. Travelers Prop. Cas. Corp.,* 302 F.3d 83, 91 (2d Cir. 2002) (citations omitted). Importantly, only disputes concerning facts that might affect the outcome of the lawsuit under controlling law will properly preclude a grant of summary judgment. *Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1052 (S.D.N.Y. 1987) (citation omitted).

## Discussion

In order to state claim under Title II of the ADA a plaintiff must plead facts which demonstrate that: (1) He or she is a qualified individual with a disability; (2) He or she is being excluded from participation in, or being denied the benefits of some service, program or activity by reasons of his or her disability; and, (3) The entity which provides the service, program or activity is a public entity. *Atkins v. County of Orange* , 251 F. Supp. 2d 1225 (S.D.N.Y. 2003).

Similarly, under § 504 of the Rehabilitation Act, a plaintiff must show that: (1) He or she has a disability for purposes of the Rehabilitation Act; (2) He or she was "otherwise qualified" for the benefit he or she had been denied; (3) He or she has been denied the benefits "solely byreason" of his or her disability; and, (4)

The benefit is part of a "program or activity receiving Federal financial assistance." *Doe v. Pfrommer,* 148 F.3d 73, 82 (2d Cir. 1998); *Flight v. Gloeckler*, 68 F.3d 61, 63 (2d Cir. 1995).[3]

Even applying the most liberal reading of Plaintiff's Complaint, it is clear that Plaintiff does not state a proper claim under either of the Acts, insofar as he fails to allege any denial of benefits, exclusion from participation in a service, program or activity, or disparate treatment from non-disabled inmates. *See generally*, Complaint. Failure to allege these elements in an ADA or Rehabilitation Act claim is a "fundamental defect" to the Complaint that should, alone, result in the dismissal of the claims. *Atkins v. County of Orange*, 251 F. Supp. 2d 1225, 1232 (S.D.N.Y. 2003); *see also*, *Lee v. DOCS*, 1999 U.S. Dist. Lexis 13214, at *13 (S.D.N.Y. Aug. 30, 1999) (*See*, Appendix A, unreported cases); *Burgess v. Goord*, 1999 U.S. Dist. LEXIS 611, at *7 (S.D.N.Y. Jan. 26, 1999) (dismissing ADA claim where inmate did not allege that he was prevented from using recreation yard or attending religious services because of his severe difficulty walking on stairs) (*See*, Appendix A, unreported cases); *Devivo v. Butler*, 1998 U.S. Dist. LEXIS 17719, at *4 (S.D.N.Y. Nov. 10, 1998) (dismissing ADA claim where blind inmate failed to allege that he was denied services in prison because he was blind) (*See*, Appendix A, unreported cases).

---

[3] Title II of the ADA and the Rehabilitation Act are closely related. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

5

Plaintiff's allegations are little more than a laundry list of complaints regarding the adequacy and timing of the health care services that he received while incarcerated at Shawangunk Correctional Facility ("Shawangunk"). As this Court accurately summarized, "[i]t appears that the gravamen of plaintiff's complaint is delay in addressing his concerns regarding medical conditions, including delay in providing outside consultation, rather than outright refusal to provide treatment."(Dkt. No. 51, 17). Specifically, Plaintiff complains about Defendant Forte's refusal to send him to an outside specialist (Dkt. No. 1, ¶ 6(2)); Defendant Forte's refusal to provide him with pain medication (Dkt. No. 1, ¶ 6(3)); and Defendant Wurzel's delay in securing a replacement contact lens for Plaintiff (Dkt. No. 1, ¶ 6(6)). These complaints ring hollow in the context of an ADA or Rehabilitation Act complaint because they do not announce any denial of benefits, exclusions or disparate treatment.

A challenge to the adequacy of medical care or health services is not a claim of "illegal disability discrimination" as contemplated under the Acts. *Atkins*, 251 F. Supp. 2d at 1232; *Doe*, 148 F.3d at 82. Plaintiff's claims were properly encompassed by his previously dismissed Eighth Amendment deliberate indifference claims, and do not state a cause of action under the ADA or the Rehabilitation Act. *Id.; See also*, *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (stating that plaintiff failed to state a claim

under the ADA because the core complaint was incompetent treatment of his underlying medical condition).

Plaintiff's failure to plead any denials, exclusions or disparate treatment based upon a disability is inconsistent with the very purpose behind the ADA and Rehabilitation Act. The statutes were created to "eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied." *Atkins*, 251 F. Supp. 2d at 1232. Failure to plead these very basic requirements must result in the dismissal of the remaining ADA and Rehabilitation Act claims.

Another reason to grant Defendants the relief they seek is Plaintiff's failure to plead any facts sufficient to establish that he is a "disabled individual" as defined by the Acts. In order to properly state a claim under the ADA and the Rehabilitation Act, "a plaintiff must plead that, (1) [he] has a disability for purposes of § 504/ADA, (2) [he] is otherwise qualified for the benefit that has been denied, and (3) [he] has been denied the benefit by reason of [his] disability." *Doe v. Goord*, 2004 U.S. Dist. Lexis 24808, at * 60 (S.D.N.Y. Dec. 10, 2004). (*See*, Appendix A, unreported cases); *see also*, *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 146-47 (2d Cir. 2002).

In order to satisfy the first requirement - that he is disabled within the meaning of the ADA and the Rehabilitation Act - a plaintiff must show that he "(i) has a physical or mental

impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." *Smith v. Masterson*, 538 F. Supp. 2d. 653, 657 (S.D.N.Y. 2008) (quoting, 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102 (2)); *see also, Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 147 (2d Cir. 2002).

Even under the liberal pleading standard afforded to *pro se* litigants in federal court, in this case, Plaintiff has not satisfied the basic pleading requirements for a viable ADA claim. Plaintiff's failure to assert any facts tending to show a "substantial limitation to a major life activity" renders Plaintiff's Complaint ripe for dismissal for failure to state a cause. *See*, *Lee v. Sony BMG Music Entm't, Inc.*, 557 F. Supp 2d. 418, 425 (S.D.N.Y. 2008) ("The disability discrimination claims under the ADA are dismissed because plaintiff fails to plead that she could not perform any major life activity, and because she pleads no facts tending to suggest that anyone discriminated against her because of any disability or perceived disability"); *See*, *Delgado v. Triborough Bridge and Tunnel Auth.,* 485 F. Supp. 2d 453, 460 (S.D.N.Y. 2007) (pleading facts that demonstrate substantial impairment of major life activity necessaryto properly plead a disability under the ADA); *Kelly v. Rice*, 375 F. Supp. 2d. 203, 207 (S.D.N.Y. 2005) (plaintiff must plead facts tending to

show that the disability substantially limited a major life activity).

A "major life activity" has been defined by the courts and regulation to include such fundamental functions as "caring for oneself, performing manual tasks, walking seeing, hearingspeaking, breathing, learning, and working." *Doe v. Goord*, 2004 U.S. Dist. Lexis 24808 (S.D.N.Y. Dec. 10, 2004); *see also*, 29 C.F.R. § 1630.2(I); *Fronczak v. DOCS*, 2 Fed. Appx. 213, 217 (2d Cir. 2001). As previously stated, Plaintiff's Complaint is little more than a litany of disparaging assertions regarding the quality of health care he received while incarcerated at Shawangunk. None of these assertions, however, implicate any specified limitation on a major life activity. For instance, nowhere in the complaint does Plaintiff aver that he suffers a limitation to an activity such as walking, standing, or seeing. *See generally, Complaint*. In his complaint, Plaintiff sets forth five discrete medical conditions, of which he alleges to have received improper treatment or medication: (1) left shoulder "pain and discomfort"; (2) abdominal hernia; (3) degenerative arthritis; (4) right knee pain, and; (5) right eye myopia. However, not once does Plaintiff assert that he was limited with respect to any "major life activity" as the result of any of these five conditions.

The only place in the entire complaint that Plaintiff, arguably, even comes close to discussing an abridgment of a life

activity, is in paragraphs 6(6) and 6(7) where he claims that the delay in securing a replacement contact lens resulted in his inability to "perform daily life activities". Of course, it must be noted that Plaintiff does not explain which of his "daily life activities" his eye condition limited. The complaint is wholly silent with respect to this fact.

With respect to eye conditions, and particularly monocular vision, from which Plaintiff claims to suffer (Dkt. No. 1, ¶ 6(5)), courts have repeatedly required the pleading of a specified limitation on a major life activity to assert a claim under the ADA. *See*, *Gibbs v. City of New York*, 2005 U.S. Dist. Lexis 3169 (E.D.N.Y. Jan. 14, 2005) (Finding plaintiff did not properly assert a cause under the ADA as "[p]laintiff claims that he is blind in one eye. However, Plaintiff fails to establish that he is substantially limited in any major life activity because of his eyesight... Plaintiff offers no evidence to demonstrate that his monocular vision affects any major life activity."); *See also*, *Rivera v. Apple Industrial Corp et al.*, 148 F. Supp. 2d 202, 213 (E.D.N.Y. 2001) (Monocular vision is insufficient to establish a substantial limitation on a major life activity); *Albertson's v. Kirkingburg*, 527 U.S. 555 (1999). Because Plaintiff fails to aver any specific allegations respecting limitations to "major life activities," he does not assert a claim of being a "disabled individual" under either the ADA or the Rehabilitation Act.

Another flaw in Plaintiff's complaint is his failure to bring suit under the Acts directly against the State of New York or DOCS. This is fatal to his claims against Defendants in their official capacities inasmuch as official capacity suits are not actionable in the Second Circuit under the ADA or the Rehabilitation Act. *See*, *Hallet v. DOCS*, 109 F. Supp. 2d 190, 199-200 (S.D.N.Y. 2000)("Because plaintiff is able to assert his ADA and Rehabilitation Act claims against DOCS directly, I find that there is no justification for allowing plaintiff to also assert ADA and Rehabilitation Act claims against the individual defendants in their official capacities"); *see also*, *Candelaria v. Cunningham,* 2000 U.S. Dist. Lexis 8669, at *7-10 (S.D.N.Y. June 19, 2000) ("there is no need for official capacity litigation when an individual can sue a government entity directly...Official capacity liability under the ADA and the RA, therefore, is not necessary"); *Shariff v. Artuz,* 2000 U.S. Dist. Lexis 12248, at *15 (S.D.N.Y. Aug. 24, 2000) ("Moreover, where, as here, plaintiffs are not barred by Eleventh Amendment sovereign immunity from suing the state directly, there is no justification for permitting claims against individual defendants in their official capacities"); *Parkinson v. Goord,* 116 F. Supp. 2d 390, 399 (W.D.N.Y. 2000) ("Nor can individuals be named as defendants in ADA suits in their official or representative capacities"); *but see*, *Butterfield v. NY*, 1998 U.S. Dist. Lexis 18676, at *16 (S.D.N.Y. July 15, 1998).

The reasoning behind the considerable jurisprudence in this Circuit, which maintains that official capacity suits are non-actionable under the ADA or the Rehabilitation Act, is both straightforward and apropos here, in light of Judge Peebles' earlier Report Recommendation.  In sum and substance, the courts that have decided this issue did so "because claims against government officials in their 'official capacity' are often permitted to avoid Eleventh Amendment and sovereign immunity issues," but "such claims are not necessary when an individual can sue a government entity directly." *Hallet*, 109 F.Supp. 2d at 199.  Thus, because the Second Circuit determined that Congress "abrogated state immunity under both the ADA and the [Rehabilitation Act], thereby permitting individuals to sue government entities under these statutes" there is no longer any need to permit official capacity suits in the ADA/Rehabilitation Act realm.  *Candelaria*, 2000 U.S. Dist. Lexis at *9.

### Conclusion

Plaintiff's remaining claims against Defendants in their official capacities sounding under the ADA and the Rehabilitation Act must fail as a matter of law.  Plaintiff does not allege either improper treatment or a disability under the Acts, and fails to name DOCS or the State of New York as party defendants. Any of these three deficiencies alone form a basis for summary dismissal.

Accordingly,

**IT IS ORDERED** that Defendants' second motion for summary judgment be, and the same hereby is, **GRANTED.**

This the 1st day of March, 2010.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

Sitting by Designation