IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SAMUEL CABASSA,

                              Plaintiff,

        v.                                    Civil Action No.
                                              9:06-CV-0852 (DNH/DEP)

RICHARD WURZEL,

                              Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

COVINGTON & BURLING LLP               PHILLIP A. IRWIN, ESQ.
620 Eighth Avenue                     DOUGLAS S. CURRAN, ESQ.
New York, NY 10018-1405

FOR DEFENDANTS:

HON. ERIC T. SCHNIEDERMAN             C. HARRIS DAGUE, ESQ.
New York State Attorney General       Assistant Attorney General
The Capitol
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

        Over seven years ago, *pro se* plaintiff Samuel Cabassa, a New York

State prison inmate, commenced this action against the superintendent of

the correctional facility in which he was incarcerated at the relevant times

and various other employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), pursuant to 42 U.S.C. § 1983, alleging deprivation of his civil rights. Plaintiff's complaint asserted an Eighth Amendment claim against defendants, alleging that they exercised deliberate indifference toward, and failed to accommodate, several of plaintiff's medical conditions. Based on those same allegations, plaintiff's complaint also asserted claims under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 120101 *et seq.*, and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

As a result of two separate decisions directing the entry of summary judgment in defendants' favor, the most recent of which was issued on March 1, 2010, it appeared that plaintiff's claims in the action had been fully addressed and extinguished. In the course of plaintiff's appeal of those decisions to the United States Court of Appeals for the Second Circuit, however, it became evident that one of the named defendants, Dr. Richard Wurzel, had never been served in the case, and, although certain filings by the Office of the New York State Attorney General suggested that defendant Wurzel was among those being represented by that office, no formal appearance was made on his behalf, and the Attorney General

ultimately lacked authorization to represent him.  Consequently, the Second Circuit vacated the entry of summary judgment in favor of defendant Wurzel, and the matter was remanded to this court for further proceedings.

Following remand, a new summons was issued, and defendant Wurzel was served.  He now moves for judgment on pleadings, arguing that dismissal of plaintiff's claims against him is warranted based upon the failure to effectuate timely service of process, and additionally that plaintiff's claims are precluded by collateral estoppel and the doctrine of law of the case based on the court's prior determinations.  For the reasons set forth below, I recommend that defendant's procedural challenge to plaintiff's claims against him, based upon untimely service, be rejected, but that defendant's merit-based argument for judgment on the pleadings be accepted, and that plaintiff's complaint be dismissed.

I.    <u>BACKGROUND</u>[1]

Plaintiff is a prison inmate currently being held in the custody of the DOCCS.  Complaint (Dkt. No. 1) at ¶ 2.  At the times relevant to his claims, plaintiff was confined in the Shawangunk Correctional Facility ("Shawangunk"), located in Wallkill, New York.  *Id.*

The claims set forth in plaintiff's complaint allege that various DOCCS employees, including defendant Wurzel, failed to provide adequate medical treatment to plaintiff with respect to five discrete medical conditions.  *See generally* Complaint (Dkt. No. 1).  At issue in connection with the remaining claim against defendant Wurzel is the treatment provided to plaintiff for his vision impairments.  Specifically, plaintiff, who is blind in his left eye, alleges that in or about April 2005, defendant Wurzel required him to wait "close to sixty days" for a replacement contact lens for his right eye, and as a result, he suffered from poor vision and was unable to perform daily life activities.  Complaint

---

[1]    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion.  *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964).

(Dkt. No. 1) at ¶ 6(6).  Plaintiff further alleges that defendant Wurzel,

together with Dr. Maryann Genovese and Shawangunk Superintendent

Joseph Smith,[2] made him wait for a temporary replacement pair of contact

lenses from October 2005 until February 8, 2006, which again resulted in

his inability to function on a day-to-day basis.[3]  *Id.* at ¶ 6(7).

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on July 13, 2006.  Dkt. No. 1.  As

defendants, plaintiff's complaint named Joseph T. Smith, the

superintendent of Shawangunk; Dr. Anthony J. Forte, who is now

deceased, but was formerly a doctor stationed at the facility; the estate of

Dr. Forte; Dr. Lester N. Wright, Chief Medical Officer for the DOCCS;

Leonardo Portuondo, the previous superintendent at Shawangunk; Dr.

Maryann Genovese, a physician employed at the facility; Dr. Richard

Wurzel, allegedly employed as an optometrist at Shawangunk; and

Thomas G. Eagen, the director of the DOCCS Inmate Grievance Program.

---

[2]      Genovese and Smith are both named-defendants in plaintiff's complaint, but were dismissed from the case by District Judges David N. Hurd and Joseph M. Hood in their decisions dated September 29, 2009, Dkt. No. 56, and March 1, 2010, Dkt. No. 62.  The Second Circuit's mandate in this case, Dkt. No. 68, did not affect the dismissal of those defendants, and thus I have not analyzed any allegations against them in this report.

[3]      Parenthetically, plaintiff's complaint does not explain why, if he is blind in his left eye, he required a "pair" of contact lenses.

*Id.* at ¶ 3(b)-(h).  Plaintiff's complaint alleges that defendants were deliberately indifferent to five of his specified medical conditions, and failed to properly investigate his grievances regarding the matters, all in violation of his rights under the Eighth Amendment, ADA, and section 504 of the Rehabilitation Act.  *See generally* Complaint (Dkt. No. 1).

Following a routine review of plaintiff's complaint and the issuance of an order granting his application for leave to proceed *in forma pauperis,* summonses were issued and forwarded to the United States Marshals Service, accompanied by a copy of a USM-285 form for each named defendant, including defendant Wurzel, for the purpose of accomplishing service.  Dkt. No. 6; Summons Issued Dated June 11, 2007.  Service was thereafter successfully effectuated with respect to five of the eight named defendants; the summonses for the remaining three, however, including defendant Wurzel, were returned unexecuted on July 27, 2007.  Dkt. Nos. 8-10, 12-15.

On December 31, 2007, Cabassa wrote to the court requesting assistance in serving the remaining defendants, including Defendant Wurzel, and enclosing new USM-285 forms for those individuals.  Merrill

Decl. Exh. A (Dkt. No. 80-1).[4]  A notice of appearance was filed by the Office of the New York State Attorney General, on February 11, 2008, on behalf of defendants Thomas G. Egan, Joseph Smith, Lester N. Wright, Leonard Portuondo, and Maryann Genovese.  Dkt. No. 20.

On February 13, 2008, the court corresponded in writing with Deputy DOCCS Counsel William M. Gonzales, Esq., requesting that his agency provide assistance in serving the estate of Anthony Forte and Dr. Katz. Dkt . No. 21.  That letter, a copy of which was forwarded to the plaintiff, did not reference defendant Wurzel.  *Id.*

Following the close of discovery, defendants moved, on November 25, 2008, for summary judgment dismissing plaintiff's complaint.  Dkt. No. 41.  The notice of motion accompanying defendants' papers advised that the motion was being made on behalf of defendants Smith, Wright, Genovese, Portuondo, and Eagan, but made no reference to defendant

---

[4]    Although Attorney Merrill has averred that plaintiff filed this letter with the court on or about December 31, 2007, a careful review of the docket sheet in this matter reveals that this letter was not received by the court in or around that time frame.  *See generally* Docket Sheet.  Indeed, this letter is found nowhere on the docket except as an exhibit to Attorney Merrill's declaration, which was filed in opposition to defendant Wurzel's currently pending motion for judgment on the pleadings.  *Id.*  Such absence from the docket raises a suspicion that plaintiff did not, in fact, send this letter to the court.  Because the letter itself, and plaintiff's request to the clerk of the court contained therein, are ultimately irrelevant to my analysis, I have considered the letter in connection with defendant Wurzel's current motion.

Wurzel.  *Id.*

Confusion ensued on December 9, 2008, when Assistant Attorney General C. Harris Dague, Esq. wrote to the court requesting that the estate of Anthony Forte, another defendant only recently served, be included in the summary judgment motion.  Dkt. No. 46.  In that letter, counsel stated, "I represent the defendants Smith, Wright, Portuondo, Genovese, *Wurzel,* Eagan and the Estate of Anthony Forte in this matter." *Id.* (emphasis added).  That motion resulted in my issuance of a report dated August 21, 2009, recommending dismissal of all claims against the defendants, with the exception of plaintiff's causes of action against them in their official capacities for violation of the ADA and section 504 of the Rehabilitation Act.  Dkt. No. 51.  On September 29, 2009, District Judge David N. Hurd adopted my report concerning that motion.  Dkt. No. 56.

On November 3, 2009, defendants filed a second motion seeking the entry of summary judgment dismissing plaintiff's remaining claims. Dkt. No. 59.  The notice of that motion again referenced only defendants Smith, Wright, Genovese, Portuondo, and Eagan, and made no mention of defendant Wurzel.[5]  Dkt. No. 59.  A decision and order was issued by

---

[5]    It is worth noting that, although by this point in the litigation the Office of the New York State Attorney General had appeared formally on behalf of the estate of

District Judge Joseph M. Hood, on March 1, 2010, granting that motion, and dismissing all remaining claims in the action. Dkt. No. 62. A final judgment was thereafter entered in favor of the defendants. Dkt. No. 63.

Following the entry of judgment, plaintiff appealed to the United States Court of Appeals for the Second Circuit, and applied to that court for *pro bono* assistance of counsel in connection with his appeal. Merrill Decl. Exh. C (Dkt. No. 80-3). On March 9, 2011, the Second Circuit granted plaintiff's request, and assigned plaintiff an attorney who was specifically instructed to submit briefing only as to whether this court erred in granting summary judgment in favor of defendant Wurzel with respect to his Eighth Amendment claim alleging a delay in providing contact lenses on two occasions, but dismissed all other portions of plaintiff's appeal as lacking an arguable basis in law or fact. Merrill Decl. Exh. D (Dkt. No. 80-4).

Despite filing a notice of appearance on behalf of defendant Wurzel and requesting an extension of the deadline for filing a brief on his behalf, Assistant Solicitor General Kate H. Nepveu later wrote to the Second Circuit on October 17, 2011, advising that her office in fact did not

_____

Anthony Forte, that defendant is similarly not referenced in the notice of motion. *See generally* Dkt. No. 59.

represent that defendant, who had never been served in the action and, consequently, would not be filing a brief with the court in connection with the pending appeal. Merrill Decl. Exhs. E, F, G (Dkt. Nos. 80-5, 80-6, 80-7). The Court of Appeals ultimately issued a summary order, dated May 16, 2012, vacating the judgment with respect to only defendant Wurzel, and remanding the matter to this court "for a determination as to whether he was ever served and any appropriate remedies that may arise therefrom." Dkt. No. 68 at 3.

Following the Second Circuit's mandate, a summons was reissued for defendant Wurzel on October 1, 2012. Dkt. No. 72. With the assistance of *pro bono* counsel, plaintiff effectuated service on defendant Wurzel on November 5, 2012.[6] Dkt. No. 73. Defendant Wurzel, who is now formally represented by the Office of the New York State Attorney General, subsequently filed an answer to plaintiff's complaint on December 24, 2012. Dkt. No. 75.

On January 15, 2013, defendant Wurzel moved seeking the entry of

---

[6]     On September 5, 2012, at the suggestion of the Second Circuit, attorneys from Covington & Burling, LLP, who were assigned to represent the plaintiff *pro bono* in that court, were assigned to assist the plaintiff in this court on remand. Dkt. No. 71. I echo the Court of Appeals' appreciation for the time expended by attorneys with that firm in capably representing plaintiff and fulfilling the often-thankless task of representing an indigent litigant.

judgment on the pleadings dismissing plaintiff's remaining claims against him. Dkt. No. 78. In his motion, defendant Wurzel argues that plaintiff's complaint should be dismissed based upon his failure to effectuate timely service of process. Def.'s Memo. of Law (Dkt. No. 78-1) at 8-11. In addition, he maintains that, by virtue of this court's summary judgment rulings and the Second Circuit's dismissal of the relevant portions of plaintiff's appeal, the remaining claims should be dismissed based on collateral estoppel and law of the case. *Id.* at 11-1; Def.'s Reply (Dkt. No. 82) at 3. Defendant's motion, which is now fully briefed, Dkt. Nos. 80, 81, 82, and 84, is now ripe for determination, and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Standard of Review

Defendants move to dismiss pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, which provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). When analyzing a

Rule 12(c) motion, the court must apply the same standard as that applicable to a motion under Rule 12(b)(6).  *See*, *e.g.*, *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994); *Wynn v. Uhler*, 941 F. Supp. 28, 29 (N.D.N.Y. 1996) (Pooler, J.).

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure calls upon a court to gauge the facial sufficiency of that pleading using a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).  Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)).  While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions.  *See id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept

the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party.  *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.).  However, the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions.  *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008).  As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant,

whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action.  *Erickson*, 551 U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (internal quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

### B.    Timeliness of Service

In his motion, as a threshold matter, defendant Wurzel argues that, because he was not served with the summons and complaint until more than six years after the action's inception, plaintiff's claims against him should be dismissed for failure to meet the governing time requirements for service as set forth in the Federal Rules of Civil Procedure and the local rules of practice for this court.  Def.'s Memo. of Law (Dkt. No. 78-1) at 8-11.

The federal rule governing service provides that,

> [i]f a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).[7] As the rule suggests, the period for service may be extended by the court. "[W]here good cause is shown, the court has no choice but to extend the time for service, and the inquiry is ended." *Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 340 (7th Cir. 1996). "If, however, good cause does not exist, the court may, in its discretion, either dismiss the action without prejudice or direct that service be effected within a specified time." *Panaras*, 94 F.3d at 340 (citing Fed. R. Civ. P. 4(m)); *see also Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007) ("We hold that district courts have discretion to grant extensions even in the absence of good cause."); *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986). When examining whether to extend the prescribed period for service, a district court is afforded ample discretion

---

[7]   This court's local rules shorten the time for service from the 120-day period under Rule 4(m) to sixty days. N.D.N.Y. L.R. 4.1(b).

to weigh the "overlapping equitable considerations" involved in determining whether good cause exists and whether an extension may be granted in the absence of good cause. *Zapata*, 502 F.3d at 197.

A plaintiff's *pro se* status entitles him to a certain degree of leniency insofar as service of process is concerned, and courts generally favor resolution of a case on its merits rather than on the basis of a procedural technicality. *Poulakis v. Amtrak*, 139 F.R.D. 107, 109 (N.D. Ill. 1991). When a plaintiff proceeds *in forma pauperis*, as is the case in this instance, the court is obligated to issue the plaintiff's process to the United States Marshal, who must, in turn, effect service upon the defendants, thereby relieving the plaintiff of the burden to serve once reasonable steps have been taken to identify the defendants named in the complaint. Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d); *see also Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996) ("[Section] 1915([d]) provides that the officers of the court 'shall issue and serve all process' when a plaintiff is proceeding in forma pauperis."). Of course, this does not mean that a *pro se* plaintiff may stand idle upon being notified that efforts by the U.S. Marshals Service to serve a particular defendant have been unsuccessful. *VanDiver v. Martin*, 304 F. Supp. 2d 934, 938-43 (E.D. Mich. 2004). A

plaintiff who does so acts at his peril, and risks dismissal of his claims against an unserved defendant.  As the Second Circuit has observed,

> [i]f a plaintiff proceeding IFP chooses to rely on the Marshals to serve the relevant parties, and it becomes apparent that the Marshals will not accomplish by the Rule 4(m) or court-ordered deadline, she must advise the district court that she is relying on the Marshals to effect service and request a further extension of time for them to do so.

*Meilleur v. Strong*, 682 F.3d 56, 63 (2d Cir. 2012).  Accordingly, a district court must look at the facts and circumstances surrounding each case to determine whether good cause exists.  *Meilleur*, 682 F.3d at 63.

In this case, despite the extraordinary length of time that passed between issuance of the summons and the ultimate act of effectuating service, I do not recommend dismissal of plaintiff's complaint against defendant Wurzel on this technical basis, and instead recommend that good cause be found to extend the deadline for service.  While plaintiff was clearly on notice that defendant Wurzel was not served prior to the entry of judgment dismissing all of his claims, *see* Dkt. No. 15, – and indeed it is uncontested that service was never accomplished within that time period –  he nonetheless was justified in his apparent belief that the service requirement had been waived or otherwise rendered unnecessary,

and that the Office of the Attorney General was appearing on behalf of defendant Wurzel.  Although it is undeniable that the Attorney General lacked the authority to waive the service requirement on that defendant's behalf, *Kurzberg v. Ashcroft*, 619 F.3d 176, 186 (2d Cir. 2010), and never in fact formally represented him, the outward appearance to the plaintiff – and indeed to this court – was that defendant Wurzel was being represented, and was included as a moving party in the two motions filed by defendants seeking the entry of summary judgment.  It was not until counsel's letter to the Second Circuit, dated October 17, 2011, that it became clear that defendant Wurzel had never been served, and the Attorney General did not represent him in the matter.  Merrill Decl. Exh. G (Dkt. No. 80-7).

To be sure, this is a close case, and the court must make the best of a bad situation.  On the one hand, Cabassa, an incarcerated *pro se* plaintiff, was left to rely upon the United States Marshals Service to effectuate service of his summons and complaint.  Were the court to dismiss plaintiff's claims against defendant Wurzel, he may be precluded from refiling those claims by the three-year statute of limitations absent a basis for finding that tolling applies.  *See Connolly v. McCall*, 254 F.3d 36,

40-41 (2d Cir. 2001) ("[The plaintiff's] federal constitutional claims, brought pursuant to 42 U.S.C. § 1983, are governed by New York's three-year statute of limitations for personal injury actions[.]").  Nonetheless, there is no indication in the record to suggest that defendant Wurzel has been aware of plaintiff's claims against him prior to the time that he was served in November 2012.  The prejudice inherent in having to defend against plaintiff's claims, which allegedly occurred over seven or more years ago is manifest and cannot be understated.  Nonetheless, on balance, the equities in this case favor the plaintiff with respect to this issue.

In summary, the affirmative acts of the New York State Office of the Attorney General in forwarding a letter to this court advising that the office was representing defendant Wurzel, the entry of an appearance in the Second Circuit on that defendant's behalf, the deference owed in light of plaintiff's *pro se* status, and the strong preference for deciding cases on their merits rather than on the basis of a procedural technicality, lead me to recommend that this portion of defendant's motion be denied.

## C.    Collateral Estoppel/Law of the Case

It appears from the Second Circuit's decision vacating the judgment entered in favor of defendant Wurzel that it is in agreement with the district court's determination regarding the dismissal of plaintiff's claims arising under the ADA and section 504 of the Rehabilitation Act, and that the sole cause of action to be addressed on remand is the plaintiff's Eighth Amendment deliberate medical indifference claim.  *See* Mandate (Dkt. No. 68) at 2 ("On March 9, 2011, this Court granted Cabassa's motion for appointment of counsel with respect to his Eighth Amendment claim against Defendant-Appellee Richard Wurzel, and dismissed the appeal with respect to his remaining claims against all other appellees.").  In his motion, defendant argues that this remaining claim is precluded by collateral estoppel and/or law of the case.  Def.'s Memo. of Law (Dkt. No. 78-1) at 11-13; Def.'s Reply (Dkt. No. 82) at 3.

### 1.    Issue Preclusion Generally

Issue preclusion, a doctrine often referred to as collateral estoppel, bars a party that has had a full and fair opportunity to litigate an issue of fact or law from relitigating the same issue once it has been decided against that party.  *Proctor v. LeClaire,* 715 F.3d 402, 414 (2d Cir. 2013);

*McKithen v. Brown,* 481 F.3d 89, 105 (2d Cir. 2007), *cert denied*, 552 U.S. 1179 (2008).  Issue preclusion applies when

> (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

*Ball v. A.O. Smith Corp.,* 451 F.3d 66, 69 (2d Cir. 2006) (quotation marks omitted); *accord*, *Proctor*, 715 F.3d at 414; *see also McKithen*, 481 F.3d at 105.  The burden of proof applicable to the factors informing the issue of collateral estoppel are variously allocated. The party seeking to invoke issue preclusion bears the burden of demonstrating that the nature of the issues are identical, and "they were necessarily decided in the prior action."  *Kulak v. City of New York,* 88 F.3d 63, 72 (2d Cir. 1996).  The burden of demonstrating that the prior action did not afford a full and fair opportunity to litigate the issue, however, rests with the party opposing application of the doctrine.  *Kulak*, 88 F.3d at 72.  The determination of whether the previous action provided a full and fair opportunity to litigate requires consideration of several factors, including

> the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the

21

competence and expertise of counsel, the availability
of new evidence, the differences in the applicable law
and the foreseeability of future litigation.

*Shell v. Brun*, 362 F.Supp. 2d 398, 400 (W.D.N.Y. 2005) (quoting *Ryan v.*

*N.Y. Tel. Co.*, 62 N.Y.2d 500, 501 (1984)).

2.     <u>Law of the Case Generally</u>

The doctrine called "law of the case" instructs that when a court

rules upon an issue, that decision continues to govern the same issues in

subsequent stages of that same case. *Pescatore v. Pan Am. World*

*Airways, Inc.*, 97 F.3d 1, 7-8 (2d Cir. 1996). Although the doctrine is

"admittedly discretionary," and a court is free to modify its own pretrial

rulings at any time before it enters a final judgment, jurisprudential

principles underlying the law of the case doctrine – including the desire

that litigants be able to rely on judicial holdings and adjust their conduct

accordingly – encourage courts to hesitate before re-examining issues

previously decided in a case absent compelling circumstances, such as an

intervening change of controlling law, the introduction of new evidence, or

the need to correct a clear error or prevent manifest injustice. *Pescatore*,

97 F.3d at 8; *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782,

789 (2d Cir. 1983).

Although under the doctrine of law of the case a court retains a certain measure of discretion to revisit its own earlier rulings, that same flexibility does not empower a district court to avoid the clear dictates of an appellate court mandate when, like in this case, that mandate "'describes the duty of the district court on remand' upon receipt of the mandate, which is the appellate court's direction to the trial court[.]" *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)). Upon receipt of such a mandate, the inferior court to which the matter has been remanded is left with no choice but to proceed in accordance with the mandate as well as "such law of the case as was established by the appellate court." *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 79 (2d Cir. 1997) (quotation marks and citation omitted); *see also Ben Zvi*, 242 F.3d at 95 ("The mandate rule compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or *impliedly* decided by the appellate court." (quotation marks omitted)). Upon review following the issuance of the mandate, the district court retains no discretion to consider questions that have been necessarily determined by the appellate court issuing the mandate. *Oneida Indian Nation of New York v. Cnty. of Oneida*, 214

F.R.D. 83, 92 (N.D.N.Y. 2003) (McCurn, J.).

### 3. Application of Issue Preclusion and Law of the Case

The allegations made by the plaintiff in support of his deliberate indifference claim against defendant Wurzel are contained in two succinct paragraphs of his complaint. In the first, he alleges that defendant Wurzel made him wait "close to sixty days for a replacement contact lens." Complaint (Dkt. No. 1) at ¶ 6(6). No other defendant is referenced in that paragraph. *Id.* Because the district court's determination granting summary judgment dismissing plaintiff's Eighth Amendment claim was vacated by the Second Circuit with regard to defendant Wurzel, *a fortiorari*, any claim stemming from that allegation remains unadjudicated.

In the second allegation against defendant Wurzel, plaintiff alleges that he, in conjunction with defendants Genovese and Smith, made him wait from October 2005 until February 8, 2006, for a temporary replacement pair of contact lenses. Complaint (Dkt. No. 1) at ¶ 6(7). This specific issue, however, was already decided at an earlier procedural juncture in this case. Specifically, the court previously addressed whether the withholding of a pair of contact lenses by defendants Genovese and Smith from plaintiff for approximately four months violated his Eighth

24

Amendment rights.  Report and Recommendation (Dkt. No. 51) at 23-24;

Order (Dkt. No. 56).  With respect to this allegation, I found the following:

> Plaintiff's medical records reveal that on March 4,
> 2003 he visited the medical facility at Shawangunk,
> complaining of difficulties with his right eye, and was
> promptly examined.  Genovese Aff. (Dkt. No. 41-7) ¶
> 88 and Exh. 5.  Plaintiff was subsequently seen by an
> opthomologist on March 12, 2003, at which time he
> was diagnosed as suffering from a detached retina.
> *Id.* ¶ 89 and Exh. 5.  Surgery to repair the damage to
> plaintiff's right eye was subsequently performed on
> March 8, 2003.  *Id.* ¶ 90 and Exh. 5.  According to
> plaintiff's records, following the surgery he returned
> to the opthomologist for a follow-up procedure,
> referred to as "photdynamic therapy," and thereafter
> was seen at eleven additional visits through October
> 8, 2004.  *Id.* ¶¶ 91-92 and Exh. 5.  Plaintiff's medical
> records also reveal that he was provided new contact
> lenses at some time prior to June 10, 2005.  *Id.* ¶ 96
> and Exh. 11.
>
> In sum, as the foregoing reflects, the record fails to
> support plaintiff's claim of defendants' deliberate
> indifference to his medical conditions and, on the
> contrary, reveals patterns of intense efforts to treat
> his various medical conditions.

Report and Recommendation (Dkt. No. 51) at 23-24.  With the adoption of

this report by Judge Hurd on September 20, 2009, Dkt. No. 56, and the

entry of judgment in the case on March 1, 2010, Dkt. No. 63, these

findings became the law of the case.  Because the allegation prompting

this analysis is precisely the same one that plaintiff advances against

defendant Wurzel, the law of the case governs, and plaintiff is precluded from litigating whether that defendant is liable for violating his Eighth Amendment rights based on that allegation.

In addition, I find that collateral estoppel applies to plaintiff's claim based on this allegation. This same issue was previously addressed in this forum, the allegation is significant in that it constitutes one of the bases for plaintiff's claims against defendants Wurzel, Smith, and Genovese, and no change in the applicable law has occurred between the time the court decided the issue as it applied to defendants Smith and Genovese. Although plaintiff was not represented by counsel at the time the court entered its findings with respect to that allegation, plaintiff was provided an opportunity to respond in opposition, he in fact responded in opposition to the motion, and has generally demonstrated competence in representing himself *pro se*. For all of these reasons, I recommend that plaintiff be collaterally estopped from pursuing this allegation against defendant Wurzel.

D.    <u>Legal Sufficiency of Remaining Claim</u>

In the event that my recommendation is adopted, the remaining claim in this action will be an Eighth Amendment deliberate medical indifference cause of action against defendant Wurzel based upon plaintiff's allegation that the sixty-day delay in providing him with replacement contact lenses caused him to "suffer poor vision."  Complaint (Dkt. No 1) at ¶ 6(6).  While the sufficiency of this allegation has not been directly challenged in defendant's motion, the court retains the inherent authority to *sua sponte* review the sufficiency in light of plaintiff's IFP status.  *See* 28 U.S.C. § 1915(e) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that. . . the action . . . fails to state a claim upon which relief may be granted[.]"); *see also Cusamano*, 604 F. Supp. 2d at 478 ("[T]he Court has the authority (and indeed the duty) to review the pleading sufficiency of *pro se* prisoner civil rights claims *sua sponte*, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b).").

1.    Legal Standard Governing Eighth Amendment Medical
       Indifference Claims

The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society[,]' or which 'involve the unnecessary and wanton infliction of pain[.]'" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958) and *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976) (internal citations omitted)).  While the Eighth Amendment "'does not mandate comfortable prisons,' neither does it permit inhumane ones."  *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)).

"These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle,* 429 U.S. at 103.  Failure to provide inmates with medical care, "[i]n the worst cases, . . . may actually produce physical torture or lingering death, [and] . . . [i]n less serious cases, . . . may result in pain and suffering no one suggests would serve any penological purpose."  *Id.*

A claim alleging that prison officials have violated an inmate's Eighth Amendment rights by inflicting cruel and unusual punishment must satisfy both objective and subjective requirements.  *Wright v. Goord*, 554 F.3d

255, 268 (2d Cir. 2009); *Price v. Reilly*, 697 F. Supp. 2d 344, 356 (E.D.N.Y. 2010).  To satisfy the objective requirement, the Second Circuit has said that

> [d]etermining whether a deprivation is an objectively serious deprivation entails two inquiries.  The first inquiry is whether the prisoner was actually deprived of adequate medical care.  As the Supreme Court has noted, the prison official's duty is only to provide reasonable medical care . . . . Second, the objective test asks whether the inadequacy in medical care is sufficiently serious.  This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner.

*Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006) (internal citations omitted).

The second inquiry of the objective test requires a court to look at the seriousness of the inmate's medical condition if the plaintiff alleges a complete failure to provide treatment.  *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003).  "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain."  *Salahuddin*, 467 F.3d at 280 (internal quotation marks

and alterations omitted).

If, on the other hand, a plaintiff's complaint alleges that treatment was provided but was inadequate, the second inquiry of the objective test is narrowly confined to that specific alleged inadequacy, rather than focusing upon the seriousness of the prisoner's medical condition. *Salahuddin*, 467 F.3d at 280. "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, [the focus of the] inquiry [is] on the challenged delay or interruption in treatment, rather than the prisoner's underlying medical condition alone." *Id.* (quoting *Smith*, 316 F.3d at 185) (internal quotations marks omitted).

To satisfy the subjective requirement, a plaintiff must demonstrate that the defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'" *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999). "In medical-treatment cases . . ., the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin*, 467 F.3d at 280. "Deliberate indifference," in a constitutional sense, "requires that the charged official

act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* (citing *Farmer,* 511 U.S. at 837); *see also Leach v. Dufrain,* 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Farmer*); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.) (same).[8] "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin*, 467 F.3d at 280 (citing *Farmer,* 511 U.S. at 839-40).

### 2.    Analysis

In this case, plaintiff's complaint alleges that

> [o]n or around April 13, 2005, Defendant Wurzel made the Plaintiff wait close to sixty days for a replacement contact lens knowing that he did not have an adequate back-up contact lens and suffered from poor vision and could not perform daily life activities without it.

Complaint (Dkt. No. 1) at ¶ 6(6).  This allegation does not plausibly suggest that defendant Wurzel's conduct was sufficiently serious to substantiate the existence of a cognizable constitutional claim.  Even liberally construed, it alleges nothing more than a delay in treatment.

---

[8]      Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

Under the circumstances alleged by plaintiff, I find that the delay was not unreasonable. Although plaintiff alleges that he had a difficult time with his vision, he does not contend that he lost all eyesight as a result of the delay in providing him a contact lens. Moreover, plaintiff's complaint does not allege that the delay caused him to suffer chronic or substantial pain. Relatedly, neither this particular allegation (nor any contained elsewhere in plaintiff's complaint) plausibly suggests that defendant Wurzel acted with the requisite subjective indifference to his serious medical needs by purposefully neglecting plaintiff's eye care at substantial risk to his serious harm. Accordingly, I recommend dismissal of plaintiff's remaining cause of action against defendant Wurzel for failure to state a claim upon which relief may be granted.

E.    Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend *at least* once if there is any indication that a valid claim might be stated. *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991) (emphasis added); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003

(E.D.N.Y.1995) (leave to replead granted where court could not say that under no circumstances would proposed claims provide a basis for relief). The court must next determine whether plaintiff is entitled to the benefit of this general rule, given the procedural history of the case.

In this instance, despite the extreme amount of time that has passed since plaintiff's original complaint was filed, in the interest of justice and in deference to his *pro se* status, I recommend that plaintiff be given one, single opportunity to amend his complaint to cure the deficiencies described in this report with respect to plaintiff's deliberate medical indifference claim against defendant Wurzel, limited to the alleged failure to provide him with a contact lens for his right eye in or about April 2005.

IV.    SUMMARY AND RECOMMENDATION

Notwithstanding that this case is over seven years old, the court cannot overlook the fact that the remaining defendant in this case, Dr. Richard Wurzel, was never served, nor did anyone authorized to represent him appear on his behalf in the case.  Given the relevant chronology, including the procedural events that could have led plaintiff to reasonably conclude that defendant Wurzel was appearing in the action through the Office of the New York State Attorney General, I conclude that good cause

exists to extend the 120-day period for service of process under Rule 4(m) of the Federal Rules of Civil Procedure, as well as the overriding sixty-day requirement of this court's local rules. Accordingly, I recommend that defendants' motion for judgment on the pleadings on this basis be denied.

Turning to the substantive aspect of defendant's motion, I recommend a finding that one of plaintiff's two allegations giving rise to the Eighth Amendment deliberate indifference claim against defendant Wurzel (specifically that he and defendants Genovese and Smith made plaintiff wait from October 2005 until February 8, 2006 for a temporary replacement pair of contact lenses) was previously determined by this court to lack merit, and that by virtue of that decision and the Second Circuit's approval of that portion of the court's order, the claim based on that allegation is precluded. In addition, although plaintiff's allegation regarding the delay in providing a replacement contact lens for sixty days in or about April 2005, is not precluded by collateral estoppel or law of the case, I conclude that the allegation does not plausibly suggest either that defendant Wurzel's conduct was sufficiently serious or that he acted with the requisite deliberate indifference necessary to support an Eighth Amendment violation.

Accordingly, it is hereby respectfully

RECOMMENDED that defendant's motion for judgment on the pleadings (Dkt. No. 78) in this action be GRANTED, with leave to replead only with respect to his Eighth Amendment medical indifference claim against defendant Wurzel based upon the alleged delay in or about April 2005 to provide him with a contact lens for his right eye.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:    August 28, 2013
           Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

35



Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

C  Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Jerome WALDO, Plaintiff,
v.
Glenn S. GOORD, Acting Commissioner of New York
State Department of Correctional Services; Peter J.
Lacy, Superintendent at Bare Hill Corr. Facility;
Wendell Babbie, Acting Superintendent at Altona Corr.
Facility; and John Doe, Corrections Officer at Bare Hill
Corr. Facility, Defendants.
No. 97-CV-1385 LEK DRH.

Oct. 1, 1998.

Jerome Waldo, Plaintiff, pro se, Mohawk Correctional
Facility, Rome, for Plaintiff.

Hon. Dennis C. Vacco, Attorney General of the State of
New York, Albany, Eric D. Handelman, Esq., Asst.
Attorney General, for Defendants.

DECISION AND ORDER

KAHN, District J.

*1 This matter comes before the Court following a
Report-Recommendation filed on August 21, 1998 by the
Honorable David R. Homer, Magistrate Judge, pursuant to
28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern
District of New York.

No objections to the Report-Recommendation have been
raised. Furthermore, after examining the record, the Court
has determined that the Report-Recommendation is not
clearly erroneous. See Fed.R.Civ.P. 72(b), Advisory

Committee Notes. Accordingly, the Court adopts the
Report-Recommendation for the reasons stated therein.

Accordingly, it is

ORDERED that the Report-Recommendation is
APPROVED and ADOPTED; and it is further

ORDERED that the motion to dismiss by defendants is
GRANTED; and it is further

ORDERED that the complaint is dismissed without
prejudice as to the unserved John Doe defendant pursuant
to Fed.R.Civ.P. 4(m), and the action is therefore dismissed
in its entirety; and it is further

ORDERED that the Clerk serve a copy of this order on all
parties by regular mail.

IT IS SO ORDERED.
HOMER, Magistrate J.

REPORT-RECOMMENDATION AND ORDER FN1

FN1. This matter was referred to the undersigned
pursuant to 28 U.S.C. § 636(b) and
N.D.N.Y.L.R. 72.3(c).

The plaintiff, an inmate in the New York Department of
Correctional Services ("DOCS"), brought this pro se
action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that
while incarcerated in Bare Hill Correctional Facility
("Bare Hill") and Altona Correctional Facility ("Altona"),
defendants violated his rights under the Eighth and
Fourteenth Amendments.FN2 In particular, plaintiff alleges
that prison officials maintained overcrowded facilities
resulting in physical and emotional injury to the plaintiff

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

and failed to provide adequate medical treatment for his injuries and drug problem. Plaintiff seeks declaratory relief and monetary damages. Presently pending is defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b). Docket No. 18. For the reasons which follow, it is recommended that the motion be granted in its entirety.

FN2. The allegations as to Bare Hill are made against defendants Goord, Lacy, and Doe. Allegations as to Altona are made against Goord and Babbie.

I. Background

Plaintiff alleges that on August 21, 1997 at Bare Hill, while he and two other inmates were playing cards, an argument ensued, and one of the two assaulted him. Compl., ¶ 17. Plaintiff received medical treatment for facial injuries at the prison infirmary and at Malone County Hospital. Id. at ¶¶ 18-19. On September 11, 1997, plaintiff was transferred to Altona and went to Plattsburgh Hospital for x-rays several days later. Id. at ¶ 21.

Plaintiff's complaint asserts that the overcrowded conditions at Bare Hill created a tense environment which increased the likelihood of violence and caused the physical assault on him by another inmate. Id. at ¶¶ 10-11. Additionally, plaintiff contends that similar conditions at Altona caused him mental distress and that he received constitutionally deficient medical treatment for his injuries. Id. at ¶¶ 21-22. The complaint alleges that Altona's lack of a drug treatment program and a dentist or specialist to treat his facial injuries constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments. Id. at ¶¶ 22, 27-28.

II. Motion to Dismiss

*2 When considering a Rule 12(b) motion, a court must assume the truth of all factual allegations in the complaint and draw all reasonable inferences from those facts in favor of the plaintiff. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir.1996). The complaint may be dismissed only when "it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Staron v. McDonald's Corp., 51 F.3d 353, 355 (2d Cir.1995) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test." Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir.1995) (citations omitted). This standard receives especially careful application in cases such as this where a pro se plaintiff claims violations of his civil rights. Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.), cert. denied, 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994).

III. Discussion

A. Conditions of Confinement

Defendants assert that plaintiff fails to state a claim regarding the conditions of confinement at Bare Hill and Altona. For conditions of confinement to amount to cruel and unusual punishment, a two-prong test must be met. First, plaintiff must show a sufficiently serious deprivation. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); Rhodes v. Chapman, 452 U.S. 347, 348 (1981)(denial of the "minimal civilized measure of life's necessities"). Second, plaintiff must show that the prison official involved was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that the official drew the inference. Farmer, 511 U.S. at 837.

1. Bare Hill

In his Bare Hill claim, plaintiff alleges that the overcrowded and understaffed conditions in the dormitory-style housing "resulted in an increase in tension, mental anguish and frustration among prisoners, and dangerously increased the potential for violence." Compl.,

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

¶ 11. Plaintiff asserts that these conditions violated his constitutional right to be free from cruel and unusual punishment and led to the attack on him by another prisoner. The Supreme Court has held that double-celling to manage prison overcrowding is not a per se violation of the Eighth Amendment. *Rhodes,* 452 U.S. at 347-48. The Third Circuit has recognized, though, that double-celling paired with other adverse circumstances can create a totality of conditions amounting to cruel and unusual punishment. *Nami v. Fauver,* 82 F.3d 63, 67 (3d Cir.1996). While plaintiff here does not specify double-celling as the source of his complaint, the concerns he raises are similar. Plaintiff alleges that overcrowding led to an increase in tension and danger which violated his rights. Plaintiff does not claim, however, that he was deprived of any basic needs such as food or clothing, nor does he assert any injury beyond the fear and tension allegedly engendered by the overcrowding. Further, a previous lawsuit by this plaintiff raised a similar complaint, that double-celling and fear of assault amounted to cruel and unusual punishment, which was rejected as insufficient by the court. *Bolton v. Goord,* 992 F.Supp. 604, 627 (S.D.N.Y.1998). The court there found that the fear created by the double-celling was not "an objectively serious enough injury to support a claim for damages." *Id.* (citing *Doe v. Welborn,* 110 F.3d 520, 524 (7th Cir.1997)).

**\*3** As in his prior complaint, plaintiff's limited allegations of overcrowding and fear, without more, are insufficient. *Compare Ingalls v. Florio,* 968 F.Supp. 193, 198 (D.N.J.1997) (Eighth Amendment overcrowding claim stated when five or six inmates are held in cell designed for one, inmates are required to sleep on floor, food is infested, and there is insufficient toilet paper) *and Zolnowski v. County of Erie,* 944 F.Supp. 1096, 1113 (W.D.N.Y.1996) (Eighth Amendment claim stated when overcrowding caused inmates to sleep on mattresses on floor, eat meals while sitting on floor, and endure vomit on the floor and toilets) *with Harris v. Murray,* 761 F.Supp. 409, 415 (E.D.Va.1990) (No Eighth Amendment claim when plaintiff makes only a generalized claim of overcrowding unaccompanied by any specific claim concerning the adverse effects of overcrowding). Thus, although overcrowding could create conditions which might state a violation of the Eighth Amendment, plaintiff has not alleged sufficient facts to support such a finding here. Plaintiff's conditions of confinement claim as to Bare

Hill should be dismissed.

2. Altona

Plaintiff also asserts a similar conditions of confinement claim regarding Altona. For the reasons discussed above, plaintiff's claim that he suffered anxiety and fear of other inmates in the overcrowded facility (Compl., ¶¶ 21-22) is insufficient to establish a serious injury or harm.

Plaintiff's second claim regarding Altona relates to the alleged inadequacies of the medical treatment he received. The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The two-pronged *Farmer* standard applies in medical treatment cases as well. *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998). Therefore, plaintiff must allege facts which would support a finding that he suffered a sufficiently serious deprivation of his rights and that the prison officials acted with deliberate indifference to his medical needs. *Farmer,* 511 U.S. at 834.

Plaintiff alleges that the medical treatment available at Altona was insufficient to address the injuries sustained in the altercation at Bare Hill. Specifically, plaintiff cites the lack of a dentist or specialist to treat his facial injuries as an unconstitutional deprivation. Plaintiff claims that the injuries continue to cause extreme pain, nosebleeds, and swelling. Compl., ¶¶ 22 & 26. For the purposes of the Rule 12(b) motion, plaintiff's allegations of extreme pain suffice for a sufficiently serious deprivation. *See Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

Plaintiff does not, however, allege facts sufficient to support a claim of deliberate indifference by the named defendants. To satisfy this element, plaintiff must demonstrate that prison officials had knowledge of facts from which an inference could be drawn that a "substantial risk of serious harm" to the plaintiff existed and that the officials actually drew the inference. *Farmer,* 511 U.S. at 837. Plaintiff's complaint does not support, even when liberally construed, any such conclusion. Plaintiff offers

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

no evidence that the Altona Superintendent or DOCS Commissioner had any actual knowledge of his medical condition or that he made any attempts to notify them of his special needs. Where the plaintiff has not even alleged knowledge of his medical needs by the defendants, no reasonable jury could conclude that the defendants were deliberately indifferent to those needs. *See Amos v. Maryland Dep't of Public Safety and Corr. Services,* 126 F.3d 589, 610-11 (4th Cir.1997), *vacated on other grounds,* 524 U.S. 935, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998).

**\*4** Plaintiff's second complaint about Altona is that it offers "no type of state drug treatment program for the plaintiff." Compl., ¶ 22. Constitutionally required medical treatment encompasses drug addiction therapy. *Fiallo v. de Batista,* 666 F.2d 729, 731 (1st Cir.1981); *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 760-61 (3d Cir.1979). As in the *Fiallo* case, however, plaintiff falls short of stating an Eighth Amendment claim as he "clearly does not allege deprivation of essential treatment or indifference to serious need, only that he has not received the type of treatment which he desires." *Id.* at 731. Further, plaintiff alleges no harm or injury attributable to the charged deprivation. Plaintiff has not articulated his reasons for desiring drug treatment or how he was harmed by the alleged deprivation of this service. *See Guidry v. Jefferson County Detention Ctr.,* 868 F.Supp. 189, 192 (E.D.Tex.1994) (to state a section 1983 claim, plaintiff must allege that some injury has been suffered).

For these reasons, plaintiff's Altona claims should be dismissed.

### B. Failure to Protect

Defendants further assert that plaintiff has not established that any of the named defendants failed to protect the plaintiff from the attack by the other inmate at Bare Hill. Prison officials have a duty "to act reasonably to ensure a safe environment for a prisoner *when they are aware* that there is a significant risk of serious injury to that prisoner." *Heisler v. Kralik,* 981 F.Supp. 830, 837 (S.D.N.Y.1997) (emphasis added); *see also Villante v. Dep't of Corr. of City of N.Y.,* 786 F.2d 516, 519 (2d

Cir.1986). This duty is not absolute, however, as "not ... every injury suffered by one prisoner at the hands of another ... translates into constitutional liability." *Farmer,* 511 U.S. at 834. To establish this liability, *Farmer's* familiar two-prong standard must be satisfied.

As in the medical indifference claim discussed above, plaintiff's allegations of broken bones and severe pain from the complained of assault suffice to establish a "sufficiently serious" deprivation. *Id.* Plaintiff's claim fails, however, to raise the possibility that he will be able to prove deliberate indifference to any threat of harm to him by the Bare Hill Superintendent or the DOCS Commissioner. Again, plaintiff must allege facts which establish that these officials were aware of circumstances from which the inference could be drawn that the plaintiff was at risk of serious harm and that they actually inferred this. *Farmer,* 511 U.S. at 838.

To advance his claim, plaintiff alleges an increase in "unusual incidents, prisoner misbehaviors, and violence" (Compl., ¶ 12) and concludes that defendants' continued policy of overcrowding created the conditions which led to his injuries. Compl., ¶ 10. The thrust of plaintiff's claim seems to suggest that the defendants' awareness of the problems of overcrowding led to knowledge of a generalized risk to the prison population, thus establishing a legally culpable state of mind as to plaintiff's injuries. Plaintiff has not offered any evidence, however, to support the existence of any personal risk to himself about which the defendants could have known. According to his own complaint, plaintiff first encountered his assailant only minutes before the altercation occurred. Compl., ¶ 17. It is clear that the named defendants could not have known of a substantial risk to the plaintiff's safety if the plaintiff himself had no reason to believe he was in danger. *See Sims v. Bowen,* No. 96-CV-656, 1998 WL 146409, at *3 (N.D.N.Y. Mar.23, 1998)(Pooler, J.)("I conclude that an inmate must inform a correctional official of the basis for his belief that another inmate represents a substantial threat to his safety before the correctional official can be charged with deliberate indifference"); *Strano v. City of New York,* No. 97-CIV-0387, 1998 WL 338097, at *3-4 (S.D.N.Y. June 24, 1998) (when plaintiff acknowledged attack was "out of the blue" and no prior incidents had occurred to put defendants on notice of threat or danger, defendants could not be held aware of any substantial risk

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

of harm to the plaintiff). Defendants' motion on this ground should, therefore, be granted.

## IV. Failure to Complete Service

**\*5** The complaint names four defendants, including one "John Doe" Correctional Officer at Bare Hill. Defendants acknowledge that service has been completed as to the three named defendants. Docket Nos. 12 & 13. The "John Doe" defendant has not been served with process or otherwise identified and it is unlikely that service on him will be completed in the near future. *See* Docket No. 6 (United States Marshal unable to complete service on "John Doe"). Since over nine months have passed since the complaint was filed (Docket No. 1) and summonses were last issued (Docket entry Oct. 21, 1997), the complaint as to the unserved defendant should be dismissed without prejudice pursuant to Fed.R.Civ.P. 4(m) and N.D .N.Y.L.R. 4.1(b).

## V. Conclusion

WHEREFORE, for the reasons stated above, it is

RECOMMENDED that defendants' motion to dismiss be GRANTED in all respects; and

IT IS FURTHER RECOMMENDED that the complaint be dismissed without prejudice as to the unserved John Doe defendant pursuant to Fed.R.Civ.P. 4(m) and N.D.N.Y.L.R. 4.1(b); and it is

ORDERED that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by regular mail, upon parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v.*

*Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,1998.
Waldo v. Goord
Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.